No. 94-423

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

CHARLES RASMUSSEN,

  Petitioner and Appellant,

 v.

HEEBS FOOD CENTER,

  Employer,

 and

STATE COMPENSATION MUTUAL INSURANCE FUND,

  Insurer and Respondent.

FILED

APR 20 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: In the Workers' Compensation Court,
      The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

  For Appellant:

    Ken H. Grenfell, Grenfell & Ogg,
    Missoula, Montana

  For Respondent:

    Leo S. Ward, Browning, Kaleczc, Berry
    & Hoven, Helena, Montana


Submitted on Briefs: January 12, 1995

Decided: April 20, 1995

Filed:

_____
    Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The appellant, Charles Rasmussen, filed a petition for permanent total disability benefits in the Workers' Compensation court, based on injuries he claimed were sustained during the course of his employment with Heebs Food Center in Bozeman on June 9, 1987. The respondent, State Compensation Mutual Insurance Fund, which insured Heebs against compensation claims at that time, denied that Rasmussen was totally disabled, and that his disability, if any, was caused by a work-related accident. After a two-day trial, the Workers' Compensation Court found that Rasmussen was totally disabled from a work-related injury and awarded benefits to him. The State Fund petitioned for a new trial, and its petition was granted. Rasmussen appeals from the Workers' Compensation Court's order granting the State Fund a new trial. We reverse the Workers' Compensation Court and reinstate its original judgment.

The following issue is dispositive on appeal:

Was it a manifest abuse of discretion for the Workers' Compensation Court to grant the State Fund's petition for a new trial?

## FACTUAL BACKGROUND

Rasmussen filed a claim with the State Fund that he was injured on June 9, 1987, when he fell while working for Heebs Food Center in Bozeman. After investigating his claim, the State Fund accepted liability for Rasmussen's injury and paid temporary total

2

disability benefits until May 1993, when the benefits were converted to permanent partial disability benefits.

On December 4, 1992, Rasmussen filed a petition for a hearing before the Workers' Compensation Court in which he alleged that he was permanently totally disabled from his job-related injury. On December 28, 1992, the State Fund filed a response in which it set forth three contentions: (1) that Rasmussen was not permanently totally disabled; (2) that Rasmussen's disability, if any, was not caused by a work-related injury; and (3) that Rasmussen was not entitled to any relief or attorney fees.

Before trial on September 20, 1993, the parties filed a pretrial order which was approved by the Workers' Compensation Court. The pretrial order stipulated that the issues to be decided were as follows: (1) whether Rasmussen is permanently totally disabled; (2) whether Rasmussen is entitled, in the alternative, to permanent partial disability benefits under § 39-71-703, MCA; and (3) whether Rasmussen is entitled to attorney fees and costs. The pretrial order specifically set forth the State Fund's contentions as follows: (1) Rasmussen is not permanently totally disabled; (2) Rasmussen's disability, if any, was not caused by an industrial injury; (3) Rasmussen is not entitled to attorney fees and costs; and (4) Rasmussen is not entitled to additional relief.

Trial commenced on September 20, 1993, in Missoula. During its opening statement, the State Fund repeatedly referred to Rasmussen's injury as an "alleged injury." Rasmussen objected and

3

argued that the State Fund had accepted liability and that the issue was to what extent Rasmussen's disability was related to the injury. The court allowed the State Fund to continue, but later engaged in the following colloquy with its counsel:

> THE COURT: I'm trying to unravel that, if you are trying to unaccept the claim in this proceeding.
>
> MR. WARD: No, this trial is about the credibility issue, Your Honor. . . .
>
> THE COURT: Okay. But is this proceeding, you're arguing that the injury did not occur, or the accident did not occur?
>
> MR. WARD: We are arguing that evidence that the accident did not occur which affects the credibility of this Claimant, Your Honor, that's what we are arguing. We're not arguing that we should be able to unravel and go back. And you know, the claim, we paid the claim. We've paid a bunch of the total disability benefits, a whole bunch of medical benefits, and reflected by that stack of records right there. We're not claiming that we're owed that money.
>
> I'm not sitting right now and saying this is the Donald Chatlin [sic] case and it's a fraud case at this point. I am saying, though, most total disability cases in my experience that go to court, that go to hearing, are credibility cases, and that affects credibility.

(Emphasis added.)

Later in the trial, Rasmussen testified that he was injured while working at Heebs on June 9, 1987. During cross-examination, his counsel objected to questions that pertained to whether Rasmussen was injured while working for Heebs on the basis that the State Fund had accepted liability for the injury and that the State Fund did not intend to pursue fraud. The State Fund again responded that the questions were related to the issue of

credibility.  No mention was made of fraud; and the court clarified that the State Fund was not attempting to rescind its original acceptance of liability.

As part of its case, the State Fund called Cindy Kern, Rasmussen's ex-wife, to testify that Rasmussen submitted a false claim.  Following her testimony, the court again expressed concern about evidence of fraud which had not been previously alleged. Again, the State Fund asserted that credibility was the issue.

On May 18, 1994, the Workers' Compensation Court entered its findings of fact, conclusions of law, and judgment.  The court held that a fraud defense had not been properly raised, and found that the accident occurred as alleged by Rasmussen.  It also found that he was permanently totally disabled from his job-related injury, and awarded benefits accordingly.

On June 8, 1994, the State Fund petitioned for a new trial on the basis that it had no notice that fraud needed to be specifically pled and was surprised by that requirement. On July 28, 1994, the Workers' Compensation Court granted the State Fund's petition for a new trial.  The court reasoned that because its rules were unclear regarding the need to specially plead affirmative defenses, such as fraud, the State Fund had not had adequate notice of the need to amend its pretrial contentions and that it should be given an opportunity to do so.  It also held that because it had not been pled as a defense, the court had not adequately considered the State Fund's evidence of fraud.

5

Therefore, the Workers' Compensation Court concluded that a new trial was appropriate pursuant to § 25-11-102, MCA. It also held that it would consider evidence of fraud at the new trial.

## DISCUSSION

Was it a manifest abuse of discretion for the Workers' Compensation Court to grant the State Fund's petition for a new trial?

We review a trial court's order granting a new trial for manifest abuse of discretion. *Jim's Excavating Service v. HKM Assoc.* (1994), 265 Mont. 494, 512, 878 P.2d 248, 259 *(citing Nelson v. Flathead Valley Transit* (1992), 251 Mont. 269, 274, 824 P.2d 263, 266.)

Rasmussen argues that the State Fund failed to allege fraud in any of its pretrial claims, failed to ask that the pretrial order be amended prior to the Workers' Compensation Court's judgment, and indicated by its attorney's representations during trial that it was not attempting to revoke its original acceptance of his claim. He contends that the State Fund should not be allowed to amend its pleadings after an entire trial and the court's unfavorable decision. The State Fund responds that it was unfair to bind it to requirements of the Rules of Civil Procedure which were not applicable to the Workers' Compensation Court and were not recognized by the Workers' Compensation Court until after the trial in this case commenced.

Based on principles of estoppel and judicial admissions, we conclude that the Workers' Compensation Court manifestly abused its discretion when it granted the State Fund a new trial.

We have previously held that a party may not benefit from asserting one position during pretrial discovery and later assert a contrary position to the detriment of its opponent at trial or on appeal. *Plouffe v. Burlington Northern, Inc.* (1986), 224 Mont. 467, 474, 730 P.2d 1148, 1153. In *Plouffe*, we relied on § 26-1-601, MCA, for the following conclusive presumption:

> [T]he truth of a declaration, act, or omission of a party, as against that party in any litigation arising out of such declaration, act, or omission, whenever he has, by such declaration, act, or omission, intentionally led another to believe a particular thing true and to act upon such belief.

Section 26-1-601, MCA; *Plouffe*, 730 P.2d at 1153.

We have also previously held that a counsel's admissions in court proceedings bind the client to those statements. *Kohne v. Yost* (1991), 250 Mont. 109, 818 P.2d 360. In *Kohne*, defense counsel admitted *in* closing argument that both parties in that case were negligent. However, the jury found that neither the defendant nor the plaintiff was negligent. The plaintiff moved for a judgment notwithstanding the verdict, and for a new trial. The basis of the motions was that the jury's decision was based on insufficient evidence, in part, because defense counsel admitted in closing argument that the defendant was negligent. *Kohne*, 818 P.2d at 361.

7

Discussing defense counsel's statement, we recognized that a counsel's admissions bind his or her client. *Kohne*, 818 P.2d at 361-62. A judicial admission is an express waiver made in court by a party or his attorney conceding the truth of an alleged fact. It has a conclusive effect upon the party who makes the admission and no further evidence can be introduced to prove, disprove, or contradict the admitted fact. *Kohne*, 818 P.2d at 362 (citing 9 Wigmore, Evidence, §§ 2588, 2590 (Chadbourn rev. 1981)). We also held that such admissions may occur at any point during litigation. *Kohne*. 818 P.2d at 362.

Based on principles of estoppel and judicial admissions, we conclude that the State Fund is bound by its counsel's statements during trial that it was not relying on the defense of fraud, and that it cannot, after an adverse result, move for a new trial so that it can allege the affirmative defense of fraud. The State Fund led Rasmussen to believe that it was not asserting fraud as a defense. It repeatedly skirted the court's questions on this issue and, on at least one occasion, stated that it was not asserting fraud. Therefore, counsel conceded for purposes of trial that fraud was not an issue. Rasmussen should not have to spend the time and assume the expense of trial on the assumption that the State Fund's position is as represented by its attorney, only to find out after the result that the whole proceeding must be repeated based on a different theory.

8

For these reasons, we hold that the Workers' Compensation Court abused its discretion when it granted a new trial to consider evidence of fraud. We reverse the Workers' Compensation Court's order and reinstate the original judgment of the Workers' Compensation Court.

_____
Ju   ice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

April 20, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mall, prepaid, to the following named:

Ken H. Grenfell
GRENFELL & OGG
412 West Alder
Missoula, MT 59802

Leo S. Ward
Browning, Kaleczc, Berry & Hoven, P.C.
P.O. Box 1697
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _N. Gallagher_
Deputy