JUSTICE SHEA
delivered the Opinion of the Court.
¶1 Gloria Bilesky appeals from the order of the Eleventh Judicial District Court, Flathead County, denying her motion to present to the jury factual statements Appellee made in a written brief to the District Court.
¶2 The issue on appeal is whether factual statements Appellee made in a brief were judicial admissions, and thus should have been presented to the jury as uncontested facts.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 On January 30,2011, Appellant Gloria Bilesky entered Appellee Shopko Stores Operating Co.’s (Shopko) Kalispell store and fell. Bilesky left the store without reporting the incident. The next day, Bilesky called Shopko and reported the incident to Shopko’s manager, Michael Beard. After speaking with Bilesky, Beard reviewed video from the store’s surveillance cameras with the employee in charge of loss prevention, Jonathan Kempff. Knowing that the surveillance system only retained footage for two to five weeks, after which it would be automatically overwritten, Beard instructed Kempff to copy footage showing Bilesky’s fall to a DVD for preservation. Kempff recorded footage to a DVD and sent it to the claims adjuster, Gallagher Bassett Services (Gallagher Bassett).
*60 ¶4 Bilesky retained counsel to represent her regarding the fall. Bilesky’s attorney requested a copy of the video footage from Gallagher Bassett on February 11, 2011, but never received it. Bilesky’s attorney continued to request the footage from Gallagher Bassett over the next few months, but Gallagher Bassett refused to provide any information regarding the claim without a court order.
¶5 Bilesky filed suit November 3, 2011, alleging Shopko failed to maintain its premises in a reasonably safe condition, which caused Bilesky’s fall and injury. In February 2012, Bilesky sent her first set of discovery requests to Shopko, in which she requested all photos, videos, or other material depicting the January 30,2011 fall. Shopko responded: "No photographs were taken and no video or audio recordings or other data retained.” In July 2012, Shopko’s attorney wrote to Bilesky’s attorney to explain that the footage of Bilesky’s fall had been accidentally recorded over. Subsequent investigation by Bilesky revealed that Kempff had recorded footage to DVD; however, the footage was from the day after Bilesky’s fall, and from the wrong cameras.
¶6 Bilesky filed a motion for sanctions based on Shopko’s spoliation of the video footage. In her brief, Bilesky argued that destruction of the video unfairly disadvantaged her because the video would have given objective evidence of highly probative facts. Bilesky then listed which facts she believed the video would have shown:
• no maintenance had been done for an extended period prior to Gloria’s fall,
• the caution, wet floor signs were not out,
• the carpets were saturated with water,
• no employee had even checked the area for at least 35 minutes,
• Gloria’s pants were visibly wet,
• she wiped her wet hands on her clothes,
• she fell forward, hard, landing on her hands and knees,
• she needed assistance getting up,
• she got up slowly and was in visible pain/discomfort, and
• her gait was altered after falling.
Bilesky requested that the court sanction Shopko either by granting default judgment, or by giving a negative inference jury instruction and precluding Shopko from raising comparative negligence as a defense.
¶7 Shopko responded to Bilesky’s motion (Response Brief), arguing (hat the motion should be denied in its entirely because the accidental spoliation was not an abuse of discovery, and Shopko should not be sanctioned in the absence of an abuse of discovery, ha its Response *61 Brief, Shopko argued that the loss of the video resulted in no unfair advantage to Shopko:
Even if this court is inclined to rule otherwise, the loss of the video has resulted in no prejudice to Plaintiff or unfair advantage to Shopko. In fact, if anything, the loss of the video creates more prejudice for Shopko than Plaintiff.
Shopko then reinforced its argument that there was no unfair advantage by pointing out that it agreed with most of Bilesky’s contentions about what the video would have shown, stating:
Furthermore, the Parties substantially agree on what the video would have shown. Plaintiff sets out in her brief what the video would have shown:
• Gloria’s pants were visibly wet;
• She wiped her wet hands on her clothes, she fell forward, hard, landing on her hands and knees;
• She needed assistance getting up, she got up slowly and was in visible pain/discomfort; and
• Her gait was altered after falling.
Defendant will not disagree with these points. Eyewitness testimony and company records show what occurred on the day of Plaintiffs fall.
Shopko then noted it disagreed with Bilesky’s other contentions about what the video showed, stating:
However, several other points Plaintiff claims the video would have shown is [sic] inaccurate based on eyewitness accounts. Those points are:
• The caution wet floor signs were not out;
• The carpets were saturated with water;
• No employee had even checked the area for at least 35 minutes; and
• No maintenance had been done for an extended period prior to Gloria’s fall.
These points remain in dispute.
¶8 Based on Shopko’s representations in its Response Brief that it agreed with certain of Bilesky’s contentions regarding the contents of the video, Bilesky requested in her trial brief that those facts about which Shopko stated it “will not disagree” be read to the juiy. Bilesky’s request pertained only to those facts that preceded Shopko’s statement, “Defendant will not disagree with these points.” Her request did not include any of the facts about which Shopko had stated, “These points remain in dispute.” In an ensuing email between counsel for the parties, Shopko objected to Bilesky’s request. Bilesky supplemented *62 her trial brief in order to address Shopko’s objection, arguing Shopko’s statements in its Response Brief were judicial admissions.
¶9 At trial, the District Court orally denied Bilesky’s request that the statements in Shopko’s Response Brief be read to the jury, holding the statements were not judicial admissions. Later in the trial, the District Court allowed Shopko to present testimony contradicting the statements and limited Bilesky’s cross examination of witnesses regarding the statements. Bilesky appeals the District Court’s determination that Shopko’s statements were not judicial admissions, and the resulting denial of her request to introduce the statements into evidence.
STANDARD OF REVIEW
¶10 Whether a statement constitutes a judicial admission depends upon the circumstances of each case. Weaver v. State, 2013 MT 247, ¶ 19, 371 Mont. 476, 310 P.3d 495 (citing Kohne v. Yost, 250 Mont. 109, 113, 818 P.2d 360, 362 (1991)). Whether a statement is one of fact or law, for the purpose of determining if the statement should be considered a judicial admission, is a question of law we review for correctness. Weaver, ¶ 19 (citing Stevens v. Novartis Pharms. Corp., 2010 MT 282, ¶ 75, 358 Mont. 474, 247 P.3d 244). A district court’s determination of whether a statement constitutes a judicial admission is reviewed for an abuse of discretion. Weaver, ¶ 19. The district court’s discretion in this regard is not unlimited, however. See Cox v. Myllymaki, 231 Mont. 320, 322, 752 P.2d 1093, 1094 (1988) (trial courts’ discretion is not unlimited).
DISCUSSION
¶11 Whether factual statements Appellee made in a brief were judicial admissions, and thus should have been presented to the jury as uncontested facts.
¶12 A judicial admission is an express waiver made to the court by a parly or its counsel "conceding for the purposes of trial the truth of an alleged fact.” Kohne, 250 Mont, at 112, 818 P.2d at 362 (quoting 9 John Henry Wigmore, Evidence in Trials at Common Law, § 2588, 821 (Chadbourn rev. 1981)). Judicial admissions have tire effect of stipulations, and were previously referred to as such. Wigmore at § 2588, 821. The main characteristic of a judicial admission is the conclusive effect upon the party making the admission; no further evidence can be introduced by the party making the admission to prove, disprove, or contradict the admitted fact. Kohne, 250 Mont, at *63 112, 818 P.2d at 362 (citing Wigmore at § 2590, 823). Statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court. Weaver, ¶ 19. This is so, in part, because “[a] written document, filed with a district court and signed by either the party or the party's attorney, is assumed to be, to the best of the signer’s knowledge, information, and belief formed after reasonable inquiry well-grounded in fact... as required by M. R. Civ. P. 11.” In re Marriage of Hart, 2011 MT 102, ¶ 16, 360 Mont. 308, 258 P.3d 389 (internal quotations and ellipses omitted). To determine whether a statement is a judicial admission depends upon the circumstances of each case. Kohne, 250 Mont, at 112, 818 P.2d at 362 (citations omitted).
¶13 A review of our case law evinces the following criteria must all be met in order for a statement to constitute a judicial admission:
1) There must be a statement made to the court. The statement can be made at any stage of the proceedings. See Kohne, 250 Mont, at 112, 818 P.2d at 362 (“[judicial admissions] may arise during discovery, pleadings, opening statements, direct and cross-examination, as well as closing arguments”). Statements made outside the litigation proceedings are not made to the court, and thus cannot be judicial admissions. See In re Estate of Hill, 281 Mont. 142, 150, 931 P.2d 1320, 1325 (1997) (an inventory and appraisement of an estate was not a judicial admission because if was not made in the course of litigation proceedings).
2) The statement must be made by a party, or the party’s attorney. See Hart, ¶ 16 (response brief and proposed findings of fact signed by attorney and conceding former spouse was current on child support were judicial admissions).[1]
3) The statement must be a statement of fact, and not a statement of opinion or law. See DeMars v. Carlstrom, 285 Mont. 334, 338, 948 P.2d 246, 249 (1997) (defendant’s testimony that automobile accident was all her fault was not a judicial admission because it *64 was either a legal conclusion, or the expression of her personal opinion).
¶14 The three elements listed above provide athreshold determination of whether a statement may be considered a judicial admission; a determination which we review for correctness. See Weaver, ¶ 19 (“Whether a statement is one of fact or law, for the purpose of determining if the statement should be considered a judicial admission, is a question of law.”); see also In re Estate of Hill, 281 Mont, at 150, 931 P.2d at 1325 (district court incorrectly determined that a party made a judicial admission in a document made outside the litigation proceedings). While these criteria must be met before a court can determine a judicial admission has occurred, the court must still look at the entire context in which the statements were made before determining whether a statement constitutes a judicial admission. See Kohne, 250 Mont, at 113, 818 P.2d at 362 (“whether a statement is a judicial admission depends upon the circumstances of each case”). That portion of the determination we review for an abuse of discretion.
¶15 In this case, the District Court held that Shopko’s statements were not judicial admissions based on its determination that (1) they were not statements of fact, and (2) witnesses were available to testify to the facts contained in the statements. Accordingly, our inquiry here is two part. First, we review whether the District Court correctly concluded the statements in questions were not statements of fact. Second, we determine whether the District Court acted arbitrarily without conscientious judgment or exceeded the bounds of reason when it determined the context did not warrant treating the statements as judicial admissions. See State v. McLaughlin, 2009 MT 211, ¶ 9, 351 Mont. 282, 210 P.3d 694 (“An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason.”).
I. Did the District Court Correctly Determine that Shopko’s Statements Were Not Statements of Fact?
¶16 In determining that Shopko’s statements were not statements of fact, the District Court stated:
I’m not inclined to treat these as judicial admissions for the following reasons. I don’t know that I believe there was a waiver. Each of these is very subjective, it’s not a fact as is in the cases that refer to that deal with financial information.... And I don’t know, I’m just sort of thinking down the road, but I think as we look at 12 people deciding this case I — the correct way is for them to hear from witnesses and judge for themselves the ability to *65 recall what they saw, what they didn’t see, rather than me telling them these are presumed facts. Because the judicial admissions — there can’t be anything to contravene these. And visibly wet, well, what is visibly wet? Is it all wet, is it just the knees? I think this is going too far for the Court.
The District Court appears to have found Shopko’s statements distinguishable from the statements in Hart (“It’s not a fact as is in the cases that refer to that deal with financial information”). See Hart, ¶ 5 (holding parly’s statement in response brief, “Hiere is no issue of [husband] having failed to pay child support,” was a judicial admission). The District Court’s distinction appears to be grounded in an apprehension that the jury could interpret these agreed-upon facts in multiple ways (“Each of these is very subjective”). The statements Shopko said it “will not disagree with” were unambiguously statements of fact: “Gloria’s pants were visibly wet; she wiped her wet hands on her clothes, she fell forward, hard, landing on her hands and knees; she needed assistance getting up, she got up slowly and was in visible pain/discomfort; and her gait was altered after falling.” These are not statements of law, nor are they opinions. See DeMars, 285 Mont, at 338, 948 P.2d at 249 (defendant’s testimony that automobile accident was all her fault was not a judicial admission because it was either a legal conclusion, or the expression of her personal opinion).
¶17 The District Court expressed concerns — and the Dissent has adopted these concerns — about the parties being unable to present evidence explaining to the jury how wet is “visibly wet.” This concern, however, misapprehends tibe effect of judicial admissions. While the parly who makes a judicial admission cannot introduce evidence contradicting or disproving the admission, nothing prevents a party from introducing evidence elaborating on it. The conclusive effect of judicial admissions means only that no further evidence can be introduced by the party making the admission to prove, disprove, or contradict the admitted fact. Kohne, 250 Mont, at 112, 818 P.2d at 362. Thus, Shopko can introduce testimony as to how wet Bilesky’s pants appeared in the video, so long as the testimony does not contradict that her pants were “visibly wet” in the video. The use of adjectives or adverbs that may occur in varying degrees (wet, hard, slowly), however, does not prevent a statement from being a statement of fact. ¶18 Shopko’s statements were not statements of law or opinion. They were statements of fact. We accordingly conclude the District Court incorrectly determined Shopko’s statements were not statements of fact.
*66 II. Did the District Court Abuse Its Discretion When It Determined the Circumstances Made It Inappropriate to Mold Shopko’s Statements to Be Judicial Admissions?
¶19 The next question is whether the District Court properly exercised its discretion in determining the circumstances did not warrant treating the statements as a judicial admission.
¶20 When determining whether the circumstances warrant holding a statement to be a judicial admission, the court’s analysis should be informed by the twofold policy underpinning the rule of judicial admissions. First, like other stipulations, judicial admissions facilitate judicial efficiency and save the parties time, labor, and expense. See Wigmore at § 2597, 851-852. Second, judicial admissions protect the integrity of the judicial process by preventing parties from playing fast and loose with the facts to suit the exigencies of self-interest. Judicial admissions prevent intentional self-contradiction from being used as a means of obtaining unfair advantage. As we have previously held, a party may not benefit from asserting one position and later assert a contrary position to the detriment of its opponent at trial. Rasmussen v. Heebs Food Ctr., 270 Mont. 492, 496, 893 P.2d 337, 339-40 (1995). ¶21 Here, the circumstance the District Court relied onin determining a judicial admission had not been made was the availability of witnesses to testify to the contents of the video:
We have fact witnesses on both sides that can testify to these things. And in fact the Defendant’s witnesses can be subject to cross-examination as to their ability to perceive the items that I’m assuming your client and her daughter will testify to. So I don’t see this as that sort of scenario where there needs to be a judicial admission because we now have no other way of proving those things and that the party clearly intended.
¶22 The availability of witnesses to testify to the facts contained in an alleged judicial admission is not a circumstance relevant to a determination of whether a statement is a judicial admission. Were the availability of other evidence part of the analysis, there would be no need for the rule that no further evidence may be admitted to prove, disprove, or contradict the admission. The very meaning of a judicial admission is that a fact has been removed from contention, making any evidence proving or disproving that fact immaterial. See Mo. Hous. Dev. Comm’n v. Brice, 919 F.2d 1306, 1314 (8th Cir. 1990) (holding the presence of evidence controverting statements in pleadings was immaterial because statements were judicial admissions which preclude all evidence disproving the statements); accord Davis v. AG. *67 Edwards & Sons, Inc., 823 F.2d 105 (5th Cir. 1987).
¶23 Two of our prior opinions on judicial admissions illustrate howthe circumstances can either warrant or not warrant holding a statement to be a judicial admission. In our first case recognizing judicial admissions, Kohne v. Yost, defense counsel argued at closing that both parties were at fault, and conceded numerous times that the defendant was at fault. Kohne, 250 Mont, at 111, 818 P.2d at 361. The jury nonetheless returned a verdict that neither party was at fault. The plaintiff moved for a new trial on the basis that the defendant had judicially admitted fault in his closing argument. The defendant’s sole argument in opposition was that counsel’s statements in closing were not judicial admissions because counsel was merely arguing an alternative legal theory and merely suggesting the defendant was negligent. The district court held it was not a judicial admission and denied the motion for a new trial.
¶24 Kohn appealed and we reversed, holding that defense counsel’s intentional strategy of admitting fault was a circumstance that warranted treating counsel’s statements in closing argument as judicial admissions. We noted that defense counsel’s strategy, both pretrial and at trial, was to pursue a comparative negligence argument and claim that his client was at fault, but less at fault than the plaintiff. Kohne, 250 Mont, at 114, 818 P.2d at 363. In that context, we held that defense counsel's statements were judicial admissions.
¶25 In contrast, in Weaver v. State, we held that the context of alternative, inconsistent claims was a circumstance that did not warrant treating counsel’s statements in a trial brief as judicial admissions. Weaver, ¶¶ 24-26. Weaver involved a decision by the State to start a back-bum fire in order to contain a wildfire. The Weavers alleged that the State negligently failed to control the back bum resulting in damage to their property. They amended their complaint to allege, in the alternative to negligence, that the State’s actions in starting or managing the back bum constituted inverse condemnation. In their trial brief, the Weavers focused solely on their inverse condemnation claim, stating: “It was surely a reasonable and necessary decision to direct the fire to the east, or to at least let it move across the Weaver property to flatter, defensible space.” Weaver, ¶ 21. The State moved to dismiss the negligence claim on the basis that the Weavers’ statement that the State’s actions were “reasonable and necessary” was a judicial admission that the State was not negligent. The district court denied the State’s motion, holding that the Weavers’ statement was not a judicial admission because it was made in the *68 context of an alternative, inconsistent claim.
¶26 The State appealed and we affirmed on the basis that the context in which the Weavers’ statement was made did not warrant treating it as a judicial admission. We held the statement was not a judicial admission, in part, because parties are permitted to plead hypothetical and inconsistent claims. See M. R. Civ. P. 8(d)(3). We distinguished Kohne, because the context of hypothetical, inconsistent claims does not warrant binding a party to a statement made in relation to one claim, so that the statement applies to a separate and inconsistent claim. Had we allowed a judicial admission under such circumstances, we would have limited the ability of parties to plead mutually inconsistent claims and defenses in the alternative. See Garman v. Griffin, 666 F.2d 1156, 1159 (8th Cir. 1981) (“To allow [claims pleaded in the alternative] to operate as admissions would render their use ineffective and frustrate their underlying purpose. Hence the decisions with seeming unanimity deny them status as judicial admissions, and generally disallow them as evidential admissions.” (quoting McCormick on Evidence, § 265, 634 (2d ed. 1972))).
¶27 Kohne and Weaver illustrate that although a trial court retains discretion to determine whether a statement is a judicial admission, that discretion must be exercised in light of the circumstances in the case and the policies underlying the rule of judicial admissions. In Kohne, we did not allow a party to admit fault at one stage, and then disavow that admission at a later stage when the admission was no longer useful. In Weaver, we did not bind a party, for purposes of its negligence claim, to a statement it made in the context of an alternative claim because the circumstances of alternative, inconsistent claims allow a party to intentionally contradict itself. The circumstances in Kohne implicated concerns about intentional self-contradiction beingused as a means of obtainingunfair advantage. The circumstances in Weaver did not.
¶28 It is readily apparent from comparing the circumstances in this case to Kohne and to Weaver that this case is much more similar to Kohne than to Weaver. In Kohne, we reversed the district court’s determination that counsel’s statements were not judicial admission because the circumstances showed counsel’s statements were part of an intentional tactical decision. Kohne, 250 Mont, at 113, 818 P.2d at 362. In this case, Shopko sought to avoid sanctions for spoliation of the video by ostensibly removing any prejudice to Bilesky. Its tactic for removing any prejudice was to stipulate to certain assertions about the contents of the video. This is evident from the language Shopko used:
*69 “[T]he loss of the video has resulted in no prejudice to the Plaintiff or unfair advantage to Shopko.... Furthermore, the parties substantially agree on what the video would have shown. Plaintiff sets out in her brief what the video would have shown.... Defendant will not disagree with these points.” As in Kohne, Shopko’s actions evince an intentional, tactical decision.
¶29 Further, like the defendant in Kohne, Shopko’s sole argument on appeal is that its statements say something which the statements plainly do not say. In Kohne, the defendant argued the statements were merely “suggestions.” See Kohne, 250 Mont, at 113, 818 P.2d at 362 (“Defense counsel contends he was only arguing an alternative legal theory and merely suggesting that the defendant was negligent.... [Djefense counsel failed to preface these admissions to the jury that the statements were only suggestions.”). Here, Shopko has argued only that its waiver (“Defendant will not dispute these points”) was conditioned on the District Court finding sanctions appropriate. However, Shopko’s brief contains no language indicatingits admissions were conditional.
¶30 If we found any language in Shopko’s brief reflecting this claimed limitation, our decision today might be entirely different. As the Dissent correctly notes, an offer to accept a particular sanction in lieu of a harsher sanction is not a judicial admission. Dissent, ¶ 53. There is a significant difference, however, between an offer to admit facts and an admission of facts. “The parties substantially agree on what the video would have shown,” and “Defendant will not disagree with these points” are not offers to admit, they are admissions.
¶31 The circumstances of this case bring it squarely within the ambit ofKohne. If the circumstances in Kohne warranted reversing the district court’s determination that there was no judicial admission, then the circumstances here warrant reversal. Accordingly, we hold the District Court exceeded the bounds of discretion when it determined the circumstances did not warrant holding Shopko’s statements to be judicial admissions.
¶32 The Dissent is concerned that we are holding Shopko’s statements to be a judicial admission when Shopko “consistently maintained that when it referenced the four points in its answer brief to the motion for sanctions, it was merely reciting what Bilesky had set forth in her opening brief.” Dissent, ¶ 47. Shopko, however, did not merely recite what Bilesky set forth in her brief. What dispels any doubt about our decision here is the language that precedes and follows the list of facts: “Furthermore, the Parties substantially agree on what the video would *70 have shown.” (Emphasis added.) Shopko then recites (hose facts from Bilesky’s proposed instruction it agreed with and followed the list with an unambiguous stipulation to these facts: Defendant will not disagree with these points.” (Emphasis added.) Shopko then concluded with a separate list of facts it disagreed with, followed by the statement, "These points remain in dispute.” These statements fit exactly within the definition of a judicial admission: an express waiver of the right to dispute certain facts at trial. It is the statements before and after the recitation of facts that leave us with no doubt that this was a judicial admission, not merely the recitation of facts from Bilesky’s proposed instruction. While such language need not always be present to create a judicial admission, its presence in this case convinces us that Shopko admitted to the facts in question. This language also leads us to disagree with the Dissent’s assertion that "Shopko was consistent in its position that these points were in dispute.” Dissent, ¶ 48. Saying the parties “agree” on listed facts, and asserting that “[we] will not disagree with” those facts, is inconsistent with a desire to dispute those facts — especially when those facts are kept carefully segregated from the list offacts that "remain in dispute.”
CONCLUSION
¶33 Shopko’s statements were statements of fact made by a party’s attorney to the court. None of the circumstances of this case warrant treating the statements as anything other than judicial admissions. Bilesky was entitled to prepare her case in reliance on the written admissions Shopko made in its Response Brief. The District Court abused its discretion when it denied Bilesky’s request to present the admissions to the juiy as uncontested facts, and when it allowed Shopko to present evidence contradicting these admissions.
¶34 Reversed and remanded for a new trial consistent with this opinion.
CHIEF JUSTICE McGRATH, JUSTICES COTTER, BAKER, WHEAT and RICE concur.

 Issues of judicial admissions usually arise in regard to statements of attorneys. Issues of judicial admissions made directly by a party usually occur in the context of testimony, particularly cross-examination. See DeMars, 285 Mont, at 338, 948 P.2d at 249; In re Raymond W. George Trust, 1999 MT 223, ¶¶ 38-39,296 Mont. 56, 986 P.2d 427. While we found in both those cases that the statements were not judicial admissions because they were not statements of fact, we later determined that, when an alleged judicial admission occurs in a party’s testimony, a five-part test must be met before it may be held a judicial admission. Conagra, Inc. v. Nierenberg, 2000 MT 213, ¶ 45, 301 Mont. 55, 7 P.3d 369.